**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Albert ROBISON, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Fred Joseph PEDOTE, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leroy JONES, Defendant-Appellant.**

**Nos. 80–1784, 80–1785 and 80–1786.**

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 26, 1980.

Decided May 14, 1981.

James Hamilton Kemper, Inc., Kemper & Henze, Michael L. Piccarreta, Michael Tryon, McGroder & Tryon, Phoenix, Ariz., for defendants-appellants.

Kenneth L. Fields, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before WRIGHT, CHOY and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Robison and co-defendants Pedote and Jones were indicted for conspiracy to destroy a building by means of explosives, 18 U.S.C. § 844(i), and various related crimes. After the district court denied a motion to dismiss the indictment on the ground of vindictive prosecution, Robison brought this interlocutory appeal pursuant to our holding in *United States v. Griffin*, 617 F.2d 1342 (9th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980) (rejection of vindictive prosecution claim appealable under "collateral order" doctrine). Because the facts in this case fail to raise the "appearance of vindictiveness" necessary to trigger inquiry into the prosecutor's motives, we grant the Government's motion for summary affirmance.

## I

On September 11, 1975, a dynamite blast destroyed Topps Tavern in Phoenix, Arizona. There were no casualties. About 10 months later, another dynamite blast in Phoenix destroyed the auto of a newspaper reporter, killing him.

In the years following, Robison defended himself against a variety of state and federal charges. In 1976, Arizona convicted him of five felony assaults. In 1977, Robison was convicted of murdering the newspaper reporter and sentenced to death; the Arizona Supreme Court, however, reversed the conviction. *State v. Robison*, 125 Ariz. 107, 608 P.2d 44 (1980). Upon remand, the murder charge was dismissed when the state could not present its case. Finally, a 1979 conviction for extortion is presently on appeal in state court.

Robison was also charged with attempting to blow up a federal building in 1976. A first trial in federal court ended in a hung jury; a second trial resulted in conviction, which was reversed in *United States v. Roberts*, 618 F.2d 530 (9th Cir. 1980). A third attempt to try Robison was halted by his interlocutory appeal seeking dismissal of the indictment. That appeal was denied. *United States v. Roberts*, 640 F.2d 225 (9th Cir. 1981).

The instant prosecution arises out of the bombing of Topps Tavern. The indictment was presented to the grand jury in March, 1980, a few days after Robison's death sentence was reversed by the Arizona Supreme Court. Robison, Pedote, and Jones moved for dismissal, claiming that the prosecution was vindictively motivated—that it was being brought to punish Robison for exercising procedural and appellate rights in the other state and federal prosecutions.[1]

The district court heard testimony concerning the motion to dismiss. It found

---

1. Pedote and Jones have joined in Robison's appeal without presenting additional facts demonstrating prosecutorial vindictiveness as to them. Their appeals, therefore, are dependent on Robison's. Since we find Robison's claim to be without merit, it is unnecessary for us to determine whether Pedote and Jones may avoid prosecution solely because there was vindictive prosecution as to a co-defendant.

that the particulars of Robison's involvement were not known to the Government until May, 1979. The court ruled that the delay from May, 1979, to March, 1980, was reasonable in view of the circumstances of the case. The court thus concluded that there was no appearance of vindictiveness and denied the motion to dismiss. This appeal followed.

## II

■ In *United States v. Griffin, supra,* we held that a presumption of vindictiveness may be inferred even in the absence of evidence that the prosecution acted with a retaliatory motive in obtaining the challenged indictment. The presumption arises when the "totality of circumstances surrounding the prosecutorial decision at issue" suggest the "appearance of vindictiveness." *Id.* at 1347. Once the presumption is established, the court must determine whether the prosecutorial decision was justified by either independent reasons or intervening circumstances sufficient to dispel the appearance of vindictiveness. *Id.; United States v. Burt,* 619 F.2d 831, 836 (9th Cir. 1980). The prosecution bears the burden of proof as to this point once the defendant establishes an appearance of vindictiveness. *See United States v. Linton,* No. 80-1548, slip op. at 1099, 1100–01 (9th Cir. Dec. 1, 1980).

We find that Robison has failed to demonstrate any connection between the exercise of procedural rights in prior prosecutions and the federal prosecution challenged here. Because he has not established the threshold appearance of vindictiveness, we make no inquiry into the motives of the prosecution.

The essence of Robison's claim is that this prosecution was brought in retaliation for his exercise of procedural rights in prior

cases. He points out that this matter was presented to the federal grand jury a few days after he won a reversal of his state death sentence. Robison asks this court to infer that the indictment was sought to punish him for vigorously defending himself in the prior state and federal cases. We find that the facts surrounding the prosecutorial decision failed to give rise to an appearance of vindictiveness.

In almost every case in which courts have condemned prosecutions as vindictive, the defendant, after exercising some procedural right, had been confronted with a more serious or an additional charge arising out of the same nucleus of operative facts as the original charge.[2] For instance, in *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the defendant exercised a right to trial *de novo* in a superior court, and was consequently charged with a felony, rather than the previous misdemeanor. The Court held that by "upping the ante" the prosecution violated the defendant's due process right to appeal. *Id.* at 28–29, 94 S.Ct. at 2102–2103. *See, United States v. Alvarado-Sandoval,* 557 F.2d 645 (9th Cir. 1977); *United States v. Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976). *Cf. United States v. De Marco,* 550 F.2d 1224 (9th Cir.), *cert. denied,* 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977) (vindictiveness found where government threatened to "restructure" case should defendant exercise right to change venue, and then reindicted defendant, adding new charge).

■ The instant prosecution arose from events separate and distinct from those on which the earlier prosecutions were based. Although this fact is neither dispositive, *United States v. Groves,* 571 F.2d 450, 454 (9th Cir. 1978), nor essential, *see De Marco, supra,* at 1226–1227, to prove vindictiveness, it is one of the key indicia scrutinized by

---

2. However, as we have recently stated:

We do not ... suggest that a defendant may claim vindictive prosecution only when he has been resentenced or reindicted on heavier charges. There may be other factual settings in which a finding of vindictive prosecution would be justified.

*United States v. Herrera,* 640 F.2d 958, 961 n.6 (9th Cir. 1981).

courts when confronted with a claim of vindictive prosecution. *See Griffin, supra,* 617 F.2d at 1347–1348. Generally, it is the prosecutor's "attempt to retry the appellant, seeking a heavier penalty *for the same acts* as originally charged [that] is inherently suspect ...." *United States v. Preciado-Gomez,* 529 F.2d 935, 939 (9th Cir.), *cert. denied,* 425 U.S. 953, 96 S.Ct. 1730, 48 L.Ed.2d 197 (1976) (emphasis in original). The defendant's position is weakened by the fact that the instant prosecution is based on a different set of facts from those previous prosecutions. *Griffin, supra,* at 1347–1348.

■ In addition, although Robison emphasizes that the federal prosecution followed immediately upon the heels of his successful state appeal of the unrelated murder conviction, the fact that the second prosecution was brought by a different sovereign further weakens defendant's position. It is well established that a defendant can be prosecuted by state and federal authorities for the same act. Thus, a defendant can be prosecuted by the United States notwithstanding a previous successful defense in state court without offending the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *United States v. Mikka,* 586 F.2d 152 (9th Cir. 1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979).

We have previously expressed doubt as to whether a prosecution could be condemned as "vindictive" when the defendant's claim is that one sovereign is punishing him for rights he asserted against a different sovereign. *Burt, supra,* 619 F.2d at 837. Though we do not now hold that a second prosecution can never be vindictive when it follows a successful defense in a foreign jurisdiction, we do hold that the involvement of separate sovereigns tends to negate a vindictive prosecution claim.

■ Finally, there was in this case no enhancement of the charges, nor a threat to enhance them, in response to the defendant's death penalty appeal. In vindictive prosecution cases, it is the Government's attempt or threat to "up the ante" by bringing new or more serious charges in response to the exercise of protected rights that violates the due process guarantee. That practice is proscribed to prevent prosecutors from chilling defendants' exercise of procedural rights through the threat that more severe or additional charges will be brought in retaliation. *Blackledge, supra,* 417 U.S. at 27, 94 S.Ct. at 2102; *United States v. Wilson,* 639 F.2d 500, 502 (9th Cir. 1981); *De Marco,* 550 F.2d at 1227. In the instant case, the defendant exercised procedural rights in a successful attempt to avoid the death penalty. The subsequent federal prosecution for a crime punishable by a maximum of ten years in prison would not deter the defendant, nor anyone similarly situated, from seeking to avoid the loss of his life.

■ The vindictive prosecution claim here is nothing more than the *post hoc ergo propter hoc* fallacy condemned in *United States v. Linton, supra,* slip op. at 1100–1101. The mere fact that this prosecution followed the exercise of certain procedural rights in other, unrelated cases is insufficient to raise the appearance of vindictiveness; no threshold showing exists to trigger the *Griffin* inquiry into the prosecutor's actual motives. *Id.,* at 1101. The Government's motion for summary affirmance is therefore granted.