UNITED STATES of America, Plaintiff,

v.

Norman Russell BAKER, Jr.,
Defendant.

Crim. No. 86–244–PA.

United States District Court,
D. Oregon.

March 4, 1987.

Charles H. Turner, U.S. Atty., Baron C. Sheldahl, Asst. U.S. Atty., Portland, Or., for plaintiff.

Marc D. Blackman, Ranson, Blackman & Simson, Portland, Or., for defendant.

## OPINION

PANNER, Chief Judge.

Defendant moves for dismissal of the superseding indictment on the grounds that it violates his right to be protected from double jeopardy, his right to be protected from vindictive prosecution, and his right to counsel and against self-incrimination. I deny the motion.

## BACKGROUND

Defendant was originally indicted on November 19, 1986. Count one alleged that on October 27, 1986, he was in illegal possession of firearms, including an Uzi semi-automatic rifle. Count two alleged illegal possession on the same date of a silencer for that weapon. Defendant was charged under the Armed Career Criminal Act, 18 U.S.C.App. II § 1202(a)(1) (1982), which specifies penalties for persons previously convicted of three or more felonies. Upon the defendant's motion and in order to reduce prejudice, I agreed to bifurcate at trial the issue of possession from the issue of the validity of defendant's prior felonies. The issue of possession went to trial on January 27, 1987. During trial the defendant took the stand and testified, *inter alia,* that he had fired the Uzi on July 5, 1986, the same day that defendant's girl friend

Kathy Robinson, accompanied by the defendant, had purchased the weapon. He also testified that he later consulted with his probation officer and learned that he should not have the guns at his residence, even though they belonged to Ms. Robinson. He testified that he told Ms. Robinson to dispose of the guns and that she had done so prior to the October 27, 1986, alleged date of possession. On January 29, 1987, while the jury was deliberating, I granted defendant's motion for a mistrial because the indictment containing allegations of the prior offenses inadvertently went to the jury. On January 30, 1987, the government procured a superseding indictment which alleged, in addition to the counts in the original indictment, that defendant possessed the Uzi on July 5, 1986.

## DISCUSSION

### 1. *Double Jeopardy.*

The fifth amendment provides that "[no person shall] be subject for the same offence to be twice put in jeopardy of life or limb." The double jeopardy clause protects a defendant from multiple punishments or repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1078, 47 L.Ed.2d 267 (1976). Jeopardy attaches when the jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).

Defendant contends that the government may not separately charge him for possessing the Uzi on July 5, 1986, and on October 27, 1986. Defendant argues that if he possessed the Uzi, his possession was continuous. Therefore, he committed at most one offense and may be charged for possessing the Uzi only on October 27, as charged in the original indictment.

Defendant bases his argument on a venerable rule. In *Crepps v. Durden*, 98 Eng. Rep. 1283, 2 Cowper 640 (K.B.1777), a justice of the peace convicted Crepps, a baker, on four separate counts of selling bread on Sunday, November 10, 1776. Crepps challenged the validity of the multiple convictions. Lord Mansfield delivered the court's opinion:

If the act of parliament gives authority to levy but *one* penalty, there is an end of the question, for there is no penalty at common law. On the construction of the act of parliament, the offence is, "exercising his ordinary trade upon the *Lord's day* ;" and *that*, without any fractions of a day, hours, or minutes. It is but *one* entire offence, whether longer or shorter in point of duration; so, whether it consist of one, or of a number of particular acts. The penalty incurred by this offence is, *five shillings.* There is no idea conveyed by the act itself, that, if a taylor sews on the *Lord's day*, every stitch he takes is a separate offence; or, if a shoe-maker or carpenter work for different customers at different times on the same *Sunday*, that those are so many separate and distinct offences. There can be but one entire offence on one and the same day: And this is a much stronger case than that which has been alluded to, of killing more hares than one on the same day: Killing a single hare is an offence; but the killing ten more on the same day will not multiply the offence, or the penalty imposed by the statute for killing one. Here, repeated offences are not the object which the legislature had in view in making the statute: But singly, to punish a man for exercising his ordinary trade and calling on a *Sunday*.

98 Eng.Rep. 1283, 1287, 2 Cowper 640, 646–47 (1777) (original emphasis). *In re Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887), followed Lord Mansfield's reasoning. In *Snow*, the Mormon defendant lived with seven wives for three years, violating a federal statute prohibiting cohabitation with more than one woman. The defendant was charged in a three-count indictment. The counts charged cohabitation during each of the three years spanning 1883–85. Defendant was convicted on all three counts. The Court reversed, holding that the defendant had committed, and could be convicted, of only one offense. Otherwise, the indictment might cover each of the thirty-five months of cohabitation, or each week, "and so on,

*ad infinitum,* for smaller periods of time." *Id.* at 282, 7 S.Ct. at 559.

*United States v. Jones,* 533 F.2d 1387 (6th Cir.1976), *cert. denied,* 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977), concerns an offense similar to that charged here. In *Jones,* the defendant was convicted of three counts of illegally possessing the same handgun on three separate occasions. The government had not shown any break in possession that would justify separate convictions. *Id.* at 1391. The *Jones* court concluded that "[t]he return of an indictment charging a course of conduct prevents the relitigation of any course of conduct charged in the indictment which is tried or dismissed with prejudice and which occurred prior to the return of the indictment." *Id.*

■ The logic of the two venerable old cases and *Jones* is persuasive. The problem for defendant, however, is that there was a break in possession between July 5 and his arrest on October 27 by defendant's own testimony. The break in possession justifies separate charges because if defendant is guilty of the alleged October possession it is a separate possession.

2. *Prosecutorial Vindictiveness.*

Defendant argues that he is being penalized by the government for exercising his constitutional right to protect himself from prejudicial information going to the jury. When the case has already gone to trial and the government subsequently indicts the defendant on a charge that carries a stiffer penalty, there is a presumption of prosecutorial vindictiveness because of the danger of improperly motivated retaliation by the government. *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). This is because once a trial begins it is likely that the state has all its information against the defendant and has made a determination of the extent to which he should be prosecuted. *Id.* at 381, 102 S.Ct. at 2492.

In *United States v. Robison,* 644 F.2d 1270, 1272 (9th Cir.1981), the court held that the presumption of vindictiveness may be inferred even in the absence of evidence that the prosecutor acted with a retaliatory motive in obtaining the challenged indictment. The presumption arises from an appearance of vindictiveness arising from the totality of the circumstances. The court stated that generally it is the "prosecutor's attempt to retry the appellant, seeking a heavier penalty *for the same acts* as originally charged [that] is inherently suspect." *Id.* at 1273 (emphasis in original). Once the presumption is established, the government bears the burden. The court must determine whether the government was justified by independent reasons or intervening circumstances. In *Robison* the court held that there was no vindictiveness because the challenged indictment arose from events separate and distinct from those in the original indictment. Similarly, in *United States v. Krezdorn,* 693 F.2d 1221 (5th Cir.1983), the court said that where the presumption exists, the prosecutor could rebut only by showing that the decision to reindict was based on new facts or evidence not known at the time of the original indictment.

■ At hearing, the government stated that at the time of the original indictment it had enough evidence of defendant's possession of the Uzi prior to October to corroborate a conviction for possession in October, but not enough to bring separate charges for possession prior to October. Defendant has not pointed to any evidence sufficient to contradict the government. A jury could find that defendant possessed the weapon on one of the dates in question but not on the other. The government has carried its burden of rebutting the presumption of vindictiveness by showing that its decision to reindict was based on new facts not known at the time of the original indictment.

3. *Privilege Against Self-Incrimination.*

As a third ground for dismissal of the superseding indictment, defendant contends that his privilege against self-incrimination and his right to counsel—which together protect the decision-making process as to whether or not he will testify—were violated because he would not have testi-

fied as he did had he known that his testimony would later be used against him.

Defendant argues that this requires the surrender of one constitutional right (the privilege against self-incrimination) in order to assert another constitutional right (the right to present a defense). Defendant argues by analogy that *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), provides authority to prohibit the forced surrender of one right in order to preserve another. In *Simmons* the defendant gave pretrial testimony to assert fourth amendment rights. The Court held that such testimony is not admissible as evidence at trial because the defendant would thereby waive his fifth amendment rights. The Court stated that when there is "undeniable tension" between different provisions of the Bill of Rights, "we find it intolerable that one constitutional right should have to be surrendered in order to assert another."

The analogy is not on point, however. It may be true that defendant did not expect a mistrial or a superseding indictment. Nevertheless, the defendant cannot expect impunity when he takes the stand and admits a crime separate from the one charged. Defendant cites no authority more closely on point than *Simmons*. It is insufficient authority to dismiss the superseding indictment. It would be very interesting if defendant could immunize other criminal conduct by testifying about it at a trial. The possibilities are endless.

## CONCLUSION

I deny the motion.